UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. C12-1389 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE IN REM |
| v. | |
| ONE 2.15 CARAT ROUND CUT DIAMOND RING WITH 14K WHITE GOLD PRONG MOUNT, G.I.A. CERTIFICATE #10407746, | |
| Defendant | |

COMES NOW the United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Richard E. Cohen, Assistant United States Attorney for the District, and alleges:

I.

This is a Complaint for Forfeiture of the 2.15 carat round cut diamond ring with 14k white gold prong mount, G.I.A. Certificate #10407746, (hereinafter defendant ring), brought pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), for violations of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 1957.

II.

This Court has jurisdiction and venue over this action under Title 28, United States Code, Sections 1345, 1355, and 1395. Venue lies in this district pursuant to Title 28, United States Code, Section 1395.

III.

The defendant ring, as described above, is now, and during the pendency of this action, will be in the jurisdiction of this Court.

IV.

The facts are as set forth in the attached Affidavit of Internal Revenue, Special Agent Jeff Holm, which is incorporated as if fully set forth herein, attached hereto as Exhibit "A."

V.

By reason of the foregoing, the United States alleges that the defendant ring is subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(C) as a property which constitutes or is derived from proceeds traceable to wire fraud.

VI.

By reason of the foregoing, the United States alleges that the defendant ring is subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(C) as a property which is involved in money laundering transactions in violation of Title 18, United States Code, Section 1957, or is property traceable to such property.

///
///
///
///
///
///
///
///
///
///
///

VERIFIED COMPLAINT FOR FORFEITURE - 2
U.S. v. One 2.15 CARAT ROUND CUT DIAMOND RING,

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of

2    the defendant ring, that due notice be given to all interested persons to appear and show

3    cause why forfeiture of the defendant property should not be decreed, that the defendant

4    ring be condemned as forfeited to the United States to be disposed of according to law,

5    and for such other and further relief as this Honorable Court may deem just and proper.

6        DATED this _16th_ day of August, 2012.

7                                    Respectfully submitted,

8                                    JENNY A. DURKAN
                                     United States Attorney
9

10

11                                   RICHARD E. COHEN
                                     Assistant United States Attorney
12                                   700 Stewart Street, Suite 5220
                                     Seattle, WA 98101
13                                   Telephone: (206) 553-2242
                                     Fax: (206) 553-6934
14                                   Richard.E.Cohen@usdoj.gov

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR FORFEITURE - 3
U.S. v. One 2.15 CARAT ROUND CUT DIAMOND RING,

1 | VERIFICATION OF COMPLAINT

2 | STATE OF WASHINGTON )
                              ) ss
3 | COUNTY OF KING )

4

5     I, Jeff Holm, declare under penalty of perjury that the following is true and correct

to the best of my knowledge:

6

7     I am a Special Agent with the Internal Revenue Service, and am assigned to this

case. I have read the attached Complaint and know the contents thereof; I have furnished

8

the information contained in the Complaint based upon my own investigation and that of

9

other reliable official Government sources; and, based on information and belief, the

10

allegations contained in the Complaint are true.

11

12

13     JEFF HOLM, Special Agent
    Internal Revenue Service

14

    SUBSCRIBED and SWORN to before me this _16 TH_ day of August, 2012, by IRS

15

Special Agent Jeff Holm.

16

17

18     Print: Jennifer M. Biretz
    Notary Public in and for the

19     State of Washington, residing

20     at Seattle, King Co.
    Expires: 7

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR FORFEITURE - 4
U.S. v. One 2.15 CARAT ROUND CUT DIAMOND RING,

**EXHIBIT "A"**

VERIFIED COMPLAINT FOR FORFEITURE - 5
U.S. v. One 2.15 CARAT ROUND CUT DIAMOND RING,

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970

## AFFIDAVIT

STATE OF WASHINGTON    )
                             )    ss
COUNTY OF KING            )

        I, Jeff Holm, Special Agent, United States Department of Treasury, Internal Revenue Service (IRS), being duly sworn, state:

### INTRODUCTION

    1.     I am employed as a Special Agent (S/A) with IRS-CI and have been so employed since October 1988.  My duties as a S/A are to investigate criminal violations of the Internal Revenue Code (IRC), enumerated in the United States Code at Title 26, and various other Sections of Title 18, including Sections 371, and 1956, and various Sections of Title 31 relating to the Bank Secrecy Act

    2.     I graduated from the Federal Law Enforcement Training Center (FLETC) in approximately March of 1990 after completing three distinct courses of instruction in U.S. Criminal Law and Procedure, IRS Tax Law and IRS Special Agent Investigative Techniques.  I have conducted investigations and assisted in the execution of financial search and seizure warrants resulting in the seizure of financial documents, United States currency, and numerous other types of evidence and assets.  From my training and experience, I have become knowledgeable in investigating and identifying tax crimes, financial crimes, conspiracies and numerous means of laundering money through the U.S. financial system.

    3.     Since August of 2007, I have been assigned as the Asset Forfeiture Coordinator (AFC) for the Seattle Field Office of IRS-CI.  My duties as the AFC include advising and assisting agents in the collection of evidence leading the forfeiture of numerous types of assets.  I also serve seizure warrants on numerous types of businesses including banks and other financial

institutions. I also coordinate the storage and disposition of those assets seized by the Seattle Field Office of IRS-CI.

      4.      I became familiar with this investigation during the course of my work assisting S/A Ryan Thompson, a member of the Innocence Lost Task Force in Tacoma, Washington.

      5.      Because this affidavit is submitted for the limited purpose of establishing probable cause in support of forfeiture, it does not set forth each and every fact that I have learned during the course of this investigation. Details of the facts summarized herein are set forth in the Application and Affidavit of Special Agent Steven J. Munson for Search Warrant of the residence and computers of Chang Young Kim, et al, which is attached hereto and incorporated as if fully set forth herein. In addition, when I rely on statements made by others, such statements are set forth in substance and as pertinent facts.

## PURPOSE OF THE AFFIDAVIT

      This affidavit is made in support of a forfeiture of the asset set forth below, subject to seizure and forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), for violations of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 1957.

| Asset Owner | Asset | Estimated Value |
|---|---|---|
| Joseph KIL | 2.15 carat round cut diamond ring | $33, 299.66 |

The ring was purchased on February 15, 2012, from Gemological Trading Corporation for a total price of $36,600, including taxes and other fees. The ring was independently appraised by Gemological Consulting Services. The diamond was valued at $33,000 and the white gold mount valued at $299.66, for a total value of $33,299.66.

## SUMMARY OF THE INVESTIGATION

As presented below, in or around March 2010, Joseph KIL, Chun Choi, and Chang Kim agreed together to defraud victims two victims, herein after referred to as "A.O." and "E.K." of funds deposited into an escrow account at Hanmi law Firm.  KIL, Choi, and Kim defrauded A.O. in violation of Title 18, United States Code, Section 1343, wire fraud, and Title 18, United States Code, Section 1957.  KIL admitted to Special Agents that he used the proceeds of the fraud to purchase a diamond ring as an Anniversary present for his wife.

On May 23, 2011, A.O. met with Chang Kim, Joseph KIL, Chun Choi, and E.K. at the Royal Realty office.  Kim, KIL, and Choi admitted that they had taken $300,000 of the funds that A.O. and E.K. had paid for motel deals, and that they had caused the Hanmi Law Office to transfer the funds into KIL's personal bank account.  They explained that KIL had then transferred funds to Kim and Choi for their personal use.  Kim, KIL, and Choi promised to repay the funds to A.O. and E.K., and begged them not to go to the police.  Chang Kim begged them on his knees not to go to police.

A.O. confronted Chang Kim with documents that A.O. had obtained from Hanmi Law Office, specifically the management agreement for Cascade Mountain Inn signed on April 6, 2010.  The copy that Hanmi Law Office provided to A.O. was not the same copy that A.O. had originally signed, but had been altered and A.O.'s initials had been forged.  This forged copy authorized Hanmi Law Office to release A.O.'s escrow funds to Joseph KIL.  Chang Kim admitted to A.O. that he had forged the document and had added a paragraph directing Hanmi Law Office to release funds to Joseph KIL's account held at Wells Fargo Bank.  Chang Kim claimed that he had done this because he needed the money to bribe bank officials in order to secure other property deals that Kim was arranging through Saehan Bank.  Kim then provided

two promissory notes to A.O. in the amount of $100,000 each; one note had a due date of June 27, 2011, and the other had a due date of August 27, 2011. The promissory note of August 27, 2011, also included Chun Choi's name, but it was not signed by Choi, and only signed by Chang Kim.

After the May 23, 2011, A.O. notified Homeland Security Investigations about the funds taken by Chang Kim, Joseph KIL, and Chun Choi, and has been cooperating with HSI and IRS agents since June 2011.

Kim, KIL, and Choi made some attempts to pay back A.O. As of September 2011, Chang Kim, Joseph KIL, and Chun Choi still owed $120,000 to A.O. for funds that they had caused to be diverted, by wire, for their own use and benefit.

On September 28, 2011, at law enforcement direction, A.O. arranged a meeting with Chang Kim to discuss the stolen funds, and A.O. agreed to wear a body wire device to record the meeting with Kim. This meeting occurred at Royal Realty. During the meeting, Kim confirmed that he, KIL, and Choi had taken the funds, without A.O.'s permission or knowledge. A.O. confronted Kim, stating that KIL and Choi had told A.O. that they had nothing to do with the missing funds. Kim replied, "They took all the money, and everything is my responsibility right now...We shared the money...everybody took the money...Joseph KIL took the money, Chun Choi took the money, I took the money. We share the money."

Kim showed paperwork to A.O. that indicated that he, KIL, and Choi had taken the money. Kim stated, "we got all the evidence here." Kim warned A.O. not to go to the police because then Kim would lose his company and not be able to pay the stolen funds back to A.O.. Kim also showed A.O. a document that detailed how much KIL and Choi owed to A.O. Kim stated, "it's right here, KIL is $55,000, Chun Choi $70,000, Lawyer $68,000, that's all."

The following day, on September 29, 2011, A.O. met with E.K., Chang Kim, Joseph KIL, and Chun Choi. Kim, KIL, and Choi admitted that they had paid a total of $195,000 of the $400,000, to A.O. and E.K., and acknowledged that they still owed the balance to them. KIL admitted that they should have paid back the money by now and that it is shameful that they had not. KIL also warned against going to the police because that would cause trouble for all of them. E.K. asked if the money was ever even in the escrow account. Choi responded that it was, and E.K. asked them to explain how the funds could have been diverted from the escrow account. Kim responded that they had forged documents to instruct Hanmi Law Office to release the funds from escrow. Kim stated that Hanmi could be in trouble as well. Kim explained that they had transferred $400,000 from escrow using this method. Kim stated, "That's right, that's right. Every deal, the four of them through escrow that way, (the money) transferred to that person's account. At that time he (KIL) was working at Saehan Bank, and the money was sent because it was said that this deal would go through no matter what."

Choi asked that the amount of $10,000 be deducted from what they owed A.O. because this was an amount that A.O. had loaned, separately, to Chang Kim. Choi acknowledged, however, that he was also liable and would do his best to pay the funds that he had taken. KIL agreed that using his account to receive the diverted funds was "stupid," and claimed that he only received $40,000. KIL admitted that it was a bad idea to touch the money, that their intention was not to cheat, and he wanted to work it out and would give back the money.

Subsequent to this meeting, Chang Kim provided a check in the amount of $30,000, issued from the Royal Realty account at PI Bank, to A.O., but told A.O. not to cash the check. In late December 2011, Kim called A.O. and directed him not to cash the check, claiming that the

account did not have sufficient funds.  To date, A.O. has only received $100,000 on one of the promissory notes.  The remaining funds have not been paid to A.O.

On February 23, 2012, A.O. met with E.K. and Chun Choi in Federal Way, Washington, to discuss payments from Choi to A.O. and E.K.  At this meeting, Choi presented a "hold harmless agreement" to A.O. and E.K., and a $25,000 cashier's check for A.O. and E.K.  Choi advised that he would not provide them with the check until they signed the hold harmless agreement.  This agreement states, amongst other things, Choi's admission that he owed at least $135,000 to E.K. and A.O. for the Cascade Mountain Inn transaction.  E.K., A.O., and Choi initialed the hold harmless agreement, and Choi then handed over a $25,000 cashier's check to A.O, and one to E.K.

On February 28, 2012, A.O. met with E.K. and Joseph KIL in Federal Way, Washington.  The purpose of the meeting was for KIL to provide a partial payment for the funds owed to them.  KIL produced a check for $1,000, and asked A.O. if he would pay the amount owed of $25,000 to A.O. in $1,000 increments, per month, for 25 months, and attempted to have A.O. sign a promissory note.  A.O. refused, and stated that he would only accept this arrangement if KIL paid the funds over a twelve month period, and signed a promissory note indicating the amount owed, the reason for the debt, and the terms.  KIL agreed to the new terms and provided A.O. with a $1,000 check, post-dated for March 15, 2012.  KIL stated that Chang Kim knows that he has to pay the money back too.  KIL agreed that he draft a new note and mail it to A.O. and E.K.  KIL admitted that of the money taken, $55,000 was his portion.  He stated that the total amount that they had diverted from the escrow account was $379,000, including funds diverted from E.K., and that $85,000 was taken by Chun Choi.  KIL tried to get A.O. and E.K. to indicate that

the money they had taken was a loan, but they refused. KIL then admitted, "I understand. All these deals, I know what we did."

On March 7, 2012, A.O. was scheduled to meet with Joseph KIL. When A.O. arrived at the meeting, he saw that E.K., Chun Choi, and Chang Kim were also present. Chang Kim explained that he had been arrested for prostitution and money laundering and the government had taken all of his records from Royal Realty. Kim told A.O. that he was working on a series of transactions involving the purchase of Chevron stations with a real estate client. In previous conversations between Kim and A.O., Kim had advised A.O. that he would be adding the amount of $100,000 in commissions to the deal with M.K. (a suspected drug smuggler), and by doing so, Kim could repay the $100,000 that he owed to A.O. Kim then claimed that he had already paid back the personal loan of $10,000 to A.O., but A.O. disputed this claim and stated that Kim had only paid $5,000 to him. Kim explained that he wanted to have the meeting that day to devise a payment plan for the funds owed to A.O. and E.K. Kim stated that his trial date was in July and he was pretty sure that he would have to go back to prison in July. Kim offered to help KIL with the portion that he owed to A.O. before July. He suggested that he would be able to pay the funds owed upon closing the Chevron deal.

A.O. then engaged in a discussion with Kim, KIL and Choi to determine the balance of funds that they each owed to A.O. and E.K. Kim explained to A.O. that in 2010, "it was a bad economy and everybody needed some money so we did, we were wrong, I know that...at that time, we thought about it, it's a crooked deal with the bank..."

KIL admitted to investigators that he had only paid A.O. and E.K. $2500 each for his portion of the fraud.

The proceeds of this fraud derived from violations of Title 18, United States Code, Section 1343, wire fraud, and violations of Title 18, United States Code, Section 1856(a), money laundering, specified unlawful activities, specifically involving the proceeds from three commercial real estate purchases, the Cascade Mountain Inn, the Comfort Inn, and the American Best Value Inn as described below:

### *Cascade Mountain Inn*

A.O. has been a business associate of Chang Kim for several years. In June 2011, A.O. approached law enforcement advising that he had been involved in a real estate transaction for the purchase of a hotel with Chang Kim, Joseph KIL, and Chun Choi, and claimed that they had embezzled funds held in an escrow account and belonging to A.O. A.O. explained that Chang Kim had admitted to stealing the funds and forging documents to fraudulently cause the disbursement of the funds from escrow to Joseph KIL's personal bank account.

A.O. provided the following background information. In March 2010, Chang Kim had approached A.O. with a deal to purchase Cascade Mountain Inn in Cle Elum, Washington, for the purchase price of $1.1 million. Kim claimed that he would partner with A.O. in the purchase of the motel, and he would also act as the buyer's agent. The note on the property was held by Saehan Bank, and Kim implied that his friend, Joseph KIL, who worked at Saehan Bank, would assist in the transaction. Kim advised A.O. that they would have to contribute a total of $400,000 as down payment for the property, and that A.O. should make a $20,000 consideration payment to the then owner of Cascade Mountain Inn.

On April 12, 2010, A.O. secured two cashier's checks payable to Hanmi Law Office: one check for $20,000 was intended for the owner of Cascade Mountain Inn as consideration

payment, and the second check, in the amount of $100,000, was intended as the down payment/earnest money to be held in escrow at Hanmi Law Office pending closing. Kim caused both checks to be deposited into the Hanmi Law Office escrow account on April 12, 2010. With these payments, an outstanding $300,000 was to be placed in escrow for closing, upon A.O. and/or Kim receiving financing for the $1.1 million dollar purchase.

Based on records provided by A.O., numerous interviews of A.O. concerning the underlying transaction and fraud, and records produced pursuant to subpoenas, this investigation has learned the disposition of A.O.'s funds that were deposited into Hanmi's escrow account on April 12, 2010. On April 12, 2010, Chun Choi sent an email to Hanmi Law Office directing them to wire transfer $100,000 of A.O.'s funds to a Wells Fargo account, Joseph KIL's checking account. Choi's email informed Hanmi Law Office that an employee of Royal Realty would be providing a cashier's check in the amount of $120,000 from A.O. later that morning. On April 13, 2010, the amount of $99,500 was wired from Hanmi's Sterling Savings (escrow) account to KIL's Wells Fargo account. This amount reflected the $100,000, less a $500 transaction fee for Hanmi Law Office. The wire documentation for this transfer provides a notation that the Originator to Beneficiary Information (OBI) should be credited towards the purchase of the Cascade Motor Inn.

On April 13, 2010, Joseph KIL made an in-bank withdrawal of $79,500 from his Wells Fargo bank Account. On April 20, 2010, Hanmi Law Office caused a wire transfer of $20,000 from their Sterling Savings escrow account to the then-owner of Cascade Motor Inn. On May 5, 2010, Joseph KIL issued a check in the amount of $10,000, payable to Yeun Mun. Yeun Mun is the wife of Chang Kim, and a co-defendant charged in the original indictment. During May 2010, Yeun Mun was the working as the "madam" of the Blue Moon business. A.O. did not

authorize or have knowledge regarding any of these wire transfers from Hanmi Law Office to Joseph KIL, or the payment to Yeun Mun.

By November 2010, A.O. was unsuccessful in obtaining financing for the Cascade Mountain Inn. This occurred for two reasons: first the price had increased to $1.5 million; second, Chang Kim backed out as a potential partner in the deal due to Kim's bad credit. In late November/early December 2010, Chang Kim introduced A.O. to E.K. as a potential partner. E.K. agreed to contribute $200,000 as a down payment for the Cascade Mountain Inn and to obtain financing for the remaining $1.1 million dollar balance.

In March 2011, A.O. and E.K. attempted to finalize the purchase of Cascade Mountain Inn. On March 23, 2011, A.O. provided a cashier's check in the amount of $80,000, payable to Hanmi Escrow, as an additional deposit, to Chang Kim. Also on March 23, 2011, Hanmi Law Office wire transferred $100,000 to First America Trust towards closing cost for the transaction.

On May 13, 2011, A.O. provided another check to Chang Kim. This check was in the amount of $20,000 and made payable to Royal Realty, although intended for the purchase of Cascade Motor Inn. On May 15, 2011, Chang Kim met with A.O. and admitted to A.O. that the funds provided by A.O. had not been used for the Cascade Mountain Inn transaction, but spent by him. Kim asked for A.O. and E.K. to provide the additional $300,000 so that they could proceed with closing on May 19, 2011. Kim explained that they could not simply back out of the deal at this point because they would lose their initial deposits. A.O. did not have access to any more funds, so Kim offered to supply $100,000 (which actually came from a loan Chun Choi secured from family members). E.K. agreed to contribute the remaining $200,000. A.O. then agreed to repay $100,000 to E.K. representing his share of the remaining escrow payment due.

The deal for the purchase of Cascade Mountain Inn was later completed by E.K., and A.O. repaid the $100,000 he owed her for his portion of the additional $200,000 down payment.

### *American Best Value Inn*

In September 2010, Chang Kim approached A.O. with a proposal to purchase American Best Value Motor Inn in Winthrop, Washington.  A.O. did not have sufficient financing so he contacted his brother-in-law, V.K. who agreed to provide funds for the down payment.  On September 8, 2010, A.O. and V.K. provided a down payment of $100,000 for the purchase of American Best Value Inn in the form of two separate cashier's checks payable to Hanmi Law Office.  One check was in the amount of $60,000 from a Key Bank account held by A.O.'s mother-in-law, and the second check was in the amount of $40,000 from a PI Bank account held by V.K.

On September 9, 2010, Hanmi Law office deposited the two checks into its Sterling Savings escrow account.  That same day, Hanmi Law Office caused the wire transfer of $100,000 to the Wells Fargo account of Joseph KIL.  The OBI for this wire transfer indicated that the funds should be credited to the purchase of "American Best Value Cascade Inn - Deposit to Lender."  On the same day, KIL made an in-bank cashier's check withdrawal of $80,000.  On September 28, 2010, KIL made another withdrawal of $2,000.  On October 2, 2010, KILo withdrew another $2,000 and on 10-12-2010 KIL withdrew another $3,000.  Neither Chang Kim, Joseph KIL, or Chun Choi have any financial or ownership interest in American Best Value Inn or Cascade Mountain Inn, nor are they lenders.

In December 2010, Saehan Bank initiated receivership proceeding of American Best Value Inn.  Sometime thereafter, V.K. asked A.O. to request the return of his contribution

($40,000) towards the purchase of American Best Value Inn. Chang Kim told A.O., however, that he could not release the funds because Saehan Bank was still attempting to determine what to do with the property.

### *Comfort Inn*

On May 7, 2010, EUN EK's company E & Y LLC made a down payment of $200,000 on the Comfort Inn in Auburn, WA. The check was made payable to the escrow company Hanmi Law Firm and deposited into the Hanmi Law Firm Sterling Savings account.

On May 7, 2010, Hanmi Law Office wired $100,000 to JOSEPH KIL'S Wells Fargo account. There is no OBI listed for this transaction. On that same day, JOSEPH KIL made two cash withdrawals from that account, one for $90,000 and the other for $2,000.

On May 20, 2010, E & Y LLC made another payment of $80,000. The check was made payable to the escrow company Hanmi Law Firm and deposited into the Hanmi Law Firm Sterling Savings account.

On May 24, 2010, Hanmi Law Firm wired $80,000 from the Hanmi Sterling Savings account to JOSEPH KIL'S Wells Fargo account. The OBI indicated the money was for Comfort Inn – Deposit to Lender. Also on 5-24-2010, JOSEPH KIL made an in-bank cash withdrawal of $75,000 from his Well Fargo account.

The following chart summarizes the monies stolen by KIL, CHOI, and KIM from A.O. and E.K. The second column shows payments that A.O. made to the Sterling Savings escrow account of Hanmi Law Firm. The third column shows payments made by E.K. The fourth column shows monies transferred via wire from the Hanmi Law Firm Escrow account at Sterling Savings to JOSEPH KIL'S Wells Fargo account. The fifth column shows cash withdrawals and one money transfer from KIL to Yeun Mun, Chang Kim's wife.

| Date | Payment from CS-4 to Hanmi Escrow Sterling Savings Acct | Payment from EK to Hanmi Escrow Sterling Savings Acct | Wire Transfer from Hanmi Escrow to Joseph KIL'S personal Wells Fargo Acctt | Cash withdrawal and transfer from KIL'S account |
|---|---|---|---|---|
| 4-12-2010 | $120,000[1] | | | |
| 4-13-2010 | | | $99,500 | $79,500 |
| 5-5-2010 | | | | $10,000[2] |
| 5-7-2010 | | $200,000 | $100,000 | $90,000 |
| 5-7-2010 | | | | $2,000 |
| 5-20-2010 | | $80,000 | | |
| 5-24-2010 | | | $80,000 | $75,000 |
| 9-8-2010 | $40,000 | | | |
| 9-8-2010 | $60,000 | | | |
| 9-9-2010 | | | $100,000 | $80,000 |
| 9-28-2010 | | | | $2,000 |
| 10-2-2010 | | | | $2,000 |
| 10-12-2010 | | | | $3,000 |
| 3-23-2011 | $80,000[3] | | | |
| 5-13-2011 | $20,000 | | | |
| **TOTALS** | **$320,000** | **$280,000** | **$379,500** | **$343,500** |

As illustrated above, A.O. deposited a total of $320,000 to Hanmi escrow. E.K. deposited $280,000. Hanmi Law Firm transferred $379,500 via wire to Joseph Kil. Usually same day or within a day or two, Joseph Kil withdrew the funds, totaling $343,500. Funds deposited by A.O. and E.K. into the Hanmi Escrow account, were immediately disbursed to Joseph Kil. Kil then immediately withdrew the funds and disbursed the proceeds to Choi and Kim. The Hanmi escrow account conceals the true source of the funds, A.O. and E.K. A.O. and E.K. did not

[1]   Two separate checks, $100,000 and $20,000
[2]   Check to Yeun Mun
[3]   On 3-23-2011, Hanmi wired $100,000 to First American Title for EK (Cle Elum Hotel Inc)

authorize the disbursements.  When the funds were wired to Kil, they then had the appearance of

a legitimate wire transfer from the Hanmi Escrow account.  The disbursement of funds from

Kil's account to Choi and Kim further concealed the source of the funds.  Kil, Choi, and Kim all

assumed they would be able to re-pay the funds and that no one would ever know.

## KIL'S Banking Summary

Joseph Kil has several accounts at Wells Fargo bank.  Where noted above, the Wells

Fargo account in receipt of the transfers from Hanmi Bank was Kil's personal Wells Fargo bank

account, not a business account.  In the four months leading up to the purchase of the diamond

ring, the balances in Kil's Wells Fargo account were minimal, never exceeding $1,018.29.

Kil has multiple accounts at Sterling Savings Bank.  Most of the Sterling Savings

accounts are for Kil's dry cleaning businesses KJ Mart and City Cleaners.  Kil also has a

personal account at Sterling Savings, from which the ring was purchased.  Ending balances in

this account in the four months leading up to the purchase of the ring were as follows:

| 10-7-2011 | $1,317.64 |
| 11-7-2011 | $10,882.95 |
| 12-7-2011 | $2,017.49 |
| 1-7-2012 | $7,981.13 |

## KIL'S Post Arrest Statements to Investigators

Kil was arrested on March 14, 2012.  After his arrest, Kil waived his rights and agreed to

speak with Special Agent Munson.  Kil admitted that he received wire transfers from Young

Choi (Hanmi Escrow) totaling $380,000, $100,000 three times and $20,000 once.  KIL was a

loan officer with Saehan bank at the time, but has since lost his job with Saehan because of this

deal and because he had not brought in any loans in over two years.

Kil stated he used his share of the money on house payments, living expenses and credit card payments.  Kil stated he bought a 20 year wedding anniversary diamond ring for his wife in February, 2012, with money in his bank account.  Kil stated he paid for the diamond ring with a check from his account at Sterling Savings Bank.  Kil stated the ring could be located in the second floor bathroom in the bottom shelf next to the toilet.  He directed agents to the ring in a gesture of cooperation and willingness to pay back the money to the victims of this crime.

Kil admitted that he had only paid A.O. and E.K. $2500 each of the $55,000 of his share from the fraud.  Kim, Choi, and Kil had originally agreed to pay back the money together, but later decided to pay back only what their share was.

**Kelly KIL**

Kelly Kyung Kil, Joseph Kil's wife, is also on the invoice for the purchase of the ring. At the time of Joseph Kil's arrest, Kelly KIL was reportedly in Korea.  Border crossing records indicate that Kelly Kil returned from Korea to the United States on April 1, 2012.  There is no record of Kelly Kil's outbound travel to Korea.  However, Kelly KIL has several incoming border crossings from Canada on August 16, 2003, August 22, 2010, November 26, 2010, December 4, 2011, and December 29, 2011.  Kelly KIL's employment history is unknown.

//

//

//

//

//

//

## CONCLUSION

Based on my training and experience, there is probable cause to believe that the 2.15 carat round cut diamond ring valued at $33,299.66 pertaining to Joseph Kil, was purchased using proceeds derived from the specified unlawful activities as set forth in this affidavit.

Dated this _16TH_ day of August, 2012.

_Jeff A. Holm_

Jeff Holm
Special Agent, US Treasury, IRS-CI

SUBSCRIBED and SWORN to before me this _16TH_ day of August, 2012, by IRS Special Agent Jeff Holm.



_Jennifer M. Biretz_

Print: _Jennifer M. Biretz_
Notary Public in and for the
State of Washington, residing
at _Seattle, King Co._
Expires: _7/4/15_